HEMMIS, Plaintiff in error, v. STATE, Defendant in error.

*June 1—June 30, 1964.*

[14] *Springfield v. Carter* (8th Cir. 1949), 175 Fed. (2d) 914, 918.

For the plaintiff in error there was a brief by *Baumblatt & Goodman* of Racine, and oral argument by *Robert P. Goodman.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, *William*

*A. Platz,* assistant attorney general, and *John Peyton,* district attorney of Racine county.

BEILFUSS, J.   The defendant contends (1) that the search and seizure of the automobile was illegal, (2) that search and seizure of his clothing was illegal, and (3) that evidence was insufficient to support a finding of the defendant's guilt.

### *Search and Seizure.*

The state takes the position that search and seizure is not in the case because of the agreement of counsel at the time of the defendant's motion to suppress.  The agreement of counsel was made in the presence of the court after a preliminary discussion.  A reading of the record reveals that both counsel and the court were aware of the agreement.  Pursuant to the agreement evidence relating to the 1954 Buick and its contents was received and no evidence relating to the defendant's clothes except the shoes was offered by the state.  The shoes themselves were not offered but witnesses testified as to their observations of them for the purpose of comparing them with shoe prints at the scene of the crime.

While there is nothing before us to suggest that the agreement was not valid we need not pass on the question because of our opinion that the search of the automobile was valid under the circumstances herein.

The officers did not have a search warrant on either occasion—Burlington or Richmond.

We recognize that the Fourth amendment of the United States constitution as well as our own constitutional provisions against unreasonable search and seizure apply to evidence in state courts as well as federal. [1]

[1] *Mapp v. Ohio* (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. (2d) 1081; *Ker v. California* (1963), 374 U. S. 23, 83 Sup. Ct. 1623, 10 L. Ed. (2d) 726; *Holt v. State* (1962), 17 Wis. (2d) 468, 117 N. W. (2d) 626.

The United States supreme court has set forth the rule that search and seizure (other than that incident to a valid arrest) is not to be conducted by police officers without a search warrant unless exceptional circumstances exist.

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

"There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except per-

haps the fumes which we suppose in time would disappear. But they were not capable at any time of being reduced to possession for presentation to court. The evidence of their existence before the search was adequate and the testimony of the officers to that effect would not perish from the delay of getting a warrant." *Johnson v. United States* (1948), 333 U. S. 10, 13, 68 Sup. Ct. 367, 92 L. Ed. 436. See also *Ker v. California, supra.*

The question before us is whether facts herein fall within the exceptional-circumstances doctrine so as to justify a search of the automobile without a search warrant.

The officers were told by the wife of the proprietor that she heard voices of more than one person. When apprehended Fogle attempted to flee from the scene. Footprints from two different types of shoes were immediately noted outside at the point of entry (the broken window) and inside near an electrical outlet used to connect the cord of a large electrical drill. The drill was on the floor near the safe and a hole had been drilled in the safe adjacent to the combination lock. From these facts the police concluded that more than one person was involved in the attempted burglary. The police searched the area and came upon the 1954 Buick parked in a residential area about two blocks from the scene of the crime. This was about 11 p. m. The officers knew the residential area well and knew the car did not belong to any of the residents. The license number was checked and the police found that it was issued to Mrs. Fogle for a Studebaker and not the Buick. The officers inquired of the two nearest residents as to whether the car belonged to guests or visitors and were informed that it did not. The car was unoccupied and unlocked. A carton for a large industrial drill of the same brand name was on the back seat of the car. At this stage the officers had probable cause to believe that the car was used by one or more of the persons involved in the felony. The automobile could be and subsequently was used to affect a flight from the scene by one of the participants. The police

actions in entering and searching the car at this stage of the investigation were reasonable, did not unduly invade the privacy of the defendant, and there were "exceptional circumstances" [2] which justified the entry and search of the car without a search warrant.

The officers entered the car, opened the glove compartment where they found Fogle's driving license and the keys to the car. Under the front seat was a safe and vault manual. The officers locked the car and left the same to continue the search. In a few moments one of the residents called the police to inform them that the car was leaving.

The defendant was apprehended and arrested as related above. The additional search of the vehicle in Illinois produced evidence which was only cumulative. The receipt of this evidence, even if erroneous, was not prejudicial to the defendant. Cf. *Pulaski v. State,* post, p. 450, 129 N. W. (2d) 204.

None of the defendant's clothing nor investigation reports concerning the clothes was introduced at the trial. The search of defendant was not prejudicial.

### *Sufficiency of the Evidence.*

All of the evidence was circumstantial. A finding of guilt can rest upon evidence which is entirely circumstantial. In *State v. Johnson* (1960), 11 Wis. (2d) 130, 134, 104 N. W. (2d) 379, we stated:

"The evidence against him is entirely circumstantial, but this is not unusual in a criminal case. Not many criminals are caught in the act like a child with his hand in the cooky jar. Circumstantial evidence may be and often is stronger and as convincing as direct evidence. The same rule of the burden of proof in a criminal case applies to circumstantial evidence as to positive, direct evidence; and in both cases the evidence must be sufficiently strong and convincing to estab-

---

[2] *Johnson v. United States, supra.*

lish the facts of guilt beyond a reasonable doubt in the mind of the trier of the facts. Circumstantial evidence has its inherent defects but human testimony, too, has its infirmities. A notion exists that all circumstantial evidence should be viewed with distrust because it can establish, at most, only a possibility of guilt. Such an opinion, based on the theory that circumstantial evidence can only be the basis for conjecture and is impotent to correctly indicate or to satisfactorily establish the facts upon which guilt must rest to the required degree of certainty, is unwarranted. It is true that circumstantial evidence in many cases may be so weak as not to meet the standard of proof. But circumstantial evidence may be and often is stronger and more satisfactory than direct evidence; *Schwantes v. State* (1906), 127 Wis. 160, 106 N. W. 237, and *Spick v. State* (1909), 140 Wis. 104, 121 N. W. 664, which discuss the subject at length."

In addition to the facts stated above, the following circumstances appear in the record of the trial. The police officers testified that when the defendant sat down and crossed his legs at the police station they viewed the sole of the defendant's shoe and that it corresponded with the imprint at the scene of the crime.

When defendant was questioned by the arresting officer in Illinois he stated that the car belonged to his "buddy" and that his "buddy" was in Chicago.

Fogle testified that he and the defendant came to Burlington together in Mrs. Fogle's car, that he left the defendant at a bowling alley, that the defendant knew nothing about the burglary, and that he had given the defendant permission to drive the car.

The credibility and weight to be given the testimony of Fogle was for the trier of the fact. The trial court could disbelieve Fogle and could find the defendant guilty beyond a reasonable doubt on the evidence before him.

*By the Court.*—Judgment affirmed.