ALSTON, Plaintiff in error, v. STATE, Defendant in error.

*January 31—March 1, 1966.*

90

For the plaintiff in error there was a brief and oral argument by *Leonard S. Zubrensky* of Milwaukee.

For the defendant in error the cause was argued by *Paul T. Miller,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Hugh R. O'Connell,* district attorney.

BEILFUSS, J. The issues presented in this case are whether the police indulged in an unreasonable search and seizure, whether there was sufficient evidence to support the conviction, and whether the defect in the warrant compels a new trial.

The federal [1] and the Wisconsin [2] constitutions protect against unreasonable searches and seizures in substantially identical provisions.[3] Therefore, the decision in *Mapp v. Ohio* [4] did not change the law in Wisconsin.[4a] That decision and others following it indicate that exclusion of evidence obtained in violation of the constitutional guaranties puts meaning into the Fourth amendment's right of privacy and restrains the police from being overzealous in law-enforcement activities. In determining whether the activities in question constituted an illegal search and seizure we must consider the purposes of the constitutional prohibitions. The federal and state constitutions prohibit only *unreasonable* searches and seizures. The right protected is the individual's right of privacy. If the search is not based upon probable cause

[1] Fourth amendment U. S. Const.

[2] Sec. 11, art. I, Wis. Const.

[3] "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." Sec. 11, art. I, Const.

[4] (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. (2d) 1081.

[4a] See *Barnes v. State* (1964), 25 Wis. (2d) 116, 120, 121, 130 N. W. (2d) 264.

or is otherwise unreasonable the penalty is exclusion of the evidence so obtained.

In determining what constitutes an unreasonable search and seizure we must also consider the peculiar facts and circumstances presented in each case.[5] It is undisputed that the search was made without warrant and not as incident to a valid arrest. In such a situation a search is valid only if such "exceptional circumstances" exist as will on balance mitigate the requirement that a warrant be obtained.

In *Johnson v. United States* [6] it is stated:

"There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, . . ."

Unlike the *Johnson Case,* the exceptional circumstances justifying the search are present here. The search was of an automobile. It is well settled that this is a significant factor.[7]

---

[5] *Ker v. California* (1963), 374 U. S. 23, 33, 83 Sup. Ct. 1623, 10 L. Ed. (2d) 726; *Rios v. United States* (1960), 364 U. S. 253, 255, 80 Sup. Ct. 1431, 4 L. Ed. (2d) 1688; *United States v. Rabinowitz* (1950), 339 U. S. 56, 63, 70 Sup. Ct. 430, 94 L. Ed. 653.

[6] (1948), 333 U. S. 10, 14, 15, 68 Sup. Ct. 367, 92 L. Ed. 436, quoted in *Hemmis v. State* (1964), 24 Wis. (2d) 346, 351, 352, 129 N. W. (2d) 209. See also *United States v. Jeffers* (1951), 342 U. S. 48, 72 Sup. Ct. 93, 96 L. Ed. 59; *McDonald v. United States* (1948), 335 U. S. 451, 69 Sup. Ct. 191, 93 L. Ed. 153.

[7] *Preston v. United States* (1964), 376 U. S. 364, 84 Sup. Ct. 881, 11 L. Ed. (2d) 777; *Brinegar v. United States* (1949), 338

"Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar." [8]

There was a great risk that the contraband and the suspects themselves would leave the area if the police were to seek a warrant. The motor of the car was running; the last tire in sight was loaded just as the police arrived; it was 3:15 a. m.—a time when no magistrate is available. Prompt police action in such a situation is necessary, not unreasonable.[9] The police are to be complimented for speedy, efficient law enforcement which apprehends criminals in the very practice of their activities.

These exceptional circumstances and the facts that the officers had been summoned to the scene, that they had observed the suspects place one tire into the trunk, that the suspects were evasive upon questioning, and that their car was some distance away from the service station where they claimed they were purchasing tires make the search reasonable in the first instance.

The tires were not seized until after the suspects had been arrested. There being no contention that the arrest was invalid, we need not consider the validity of the seizure.

We must now consider whether the search conducted transgressed the bounds of reasonableness. There is nothing in the search under the circumstances to taint it with unreasonableness. The search consisted of raising the lid of an unlocked automobile trunk and looking at the contents. This is quite different from a forceable entry to premises. It is quite a different invasion of the right of privacy protected than an entry into a man's bedcham-

U. S. 160, 69 Sup. Ct. 1302, 93 L. Ed. 1879; *Carroll v. United States* (1925), 267 U. S. 132, 45 Sup. Ct. 280, 69 L. Ed. 543.

[8] *Preston v. United States, supra,* at pages 366, 367, footnote 7.

[9] See *Ker v. California, supra,* footnote 5.

bers. It is quite different from a search of a man's person.

We conclude that the search was lawful in the first instance and was not effected in an unlawful manner under all the facts and circumstances involved.

Plaintiff in error contends that no probable cause to search the automobile was presented at trial. The record is barren of what Tuller told the officer who talked to him on the telephone. The record is also barren of what the police radio dispatcher told the investigating officers. Of course, this is because counsel for plaintiff in error objected to inquiries on these subjects on the basis of hearsay, and because when the state presented its case it had no reason to suspect that probable cause for the search would be an issue. Counsel at no time moved to suppress the evidence before trial nor did he object to the testimony of the search, but moved to dismiss after the state's case was in on the ground that the evidence was seized invalidly. The trial court treated this motion as a motion to suppress and denied it because he found probable cause for the search. We agree with the court's determination for the foregoing reasons but note that the motion may be considered untimely, and the objection waived.

"Defenses and objections based on . . . the use of illegal means to secure evidence (except confessions) must be raised before trial by motion or be deemed waived. But the trial court may, in its discretion, entertain such motion at a later stage of the trial, in which case the defendant waives any jeopardy that may have attached. A motion to suppress evidence shall be so entertained, with waiver of jeopardy, when it appears that the defendant is surprised by the state's possession of such evidence." [10]

We have considered this question in *State v. Hoyt* [11] where we said, "It may well be that the court's ruling could be sustained solely on the ground that the objection

[10] Sec. 955.09 (3), Stats.
[11] (1964), 21 Wis. (2d) 284, 296, 128 N. W. (2d) 645.

was untimely." [12] Since the trial court elected to entertain the motion as a motion to suppress, we sustain the denial of the motion on a finding of probable cause to search in accordance with the trial court's decision.

Plaintiff in error argues that the state did not prove its case beyond a reasonable doubt insofar as the three tires found against the fence are concerned. The total number of tires involved in an attempted theft becomes important because in theft and attempted theft the value of the property controls the maximum sentence that can be imposed. [13] Conviction as to those three tires is based entirely on circumstantial proof. We have discussed the question of conviction by circumstantial evidence alone at length on several occasions.

"The evidence against him is entirely circumstantial, but this is not unusual in a criminal case. Not many criminals are caught in the act like a child with his hand in the cooky jar. Circumstantial evidence may be and often is stronger and as convincing as direct evidence. The same rule of the burden of proof in a criminal case applies to circumstantial evidence as to positive, direct evidence; and in both cases the evidence must be sufficiently strong and convincing to establish the facts of

---

[12] *State v. Hoyt, supra,* at page 296, footnote 11.

[13] "Sec. 943.20 THEFT. (1) Whoever does any of the following may be penalized as provided in sub. (3):

"(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property. . . .

"(3) *Penalties.* Penalties for violation of this section shall be as follows:

"(a) If the value of the property does not exceed $100, a fine of not more than $200 or imprisonment for not more than 6 months or both.

"(b) If the value of the property exceeds $100 but not $2,500, a fine of not more than $5,000 or imprisonment for not more than 5 years or both."

"Sec. 939.32 ATTEMPT. (1) Whoever attempts to commit a felony or a battery as defined by s. 940.20 or theft as defined by s. 943.20 may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime; . . ."

guilt beyond a reasonable doubt in the mind of the trier of the facts. Circumstantial evidence has its inherent defects but human testimony, too, has its infirmities. A notion exists that all circumstantial evidence should be viewed with distrust because it can establish, at most, only a possibility of guilt. Such an opinion, based on the theory that circumstantial evidence can only be the basis for conjecture and is impotent to correctly indicate or to satisfactorily establish the facts upon which guilt must rest to the required degree of certainty, is unwarranted. It is true that circumstantial evidence in many cases may be so weak as not to meet the standard of proof. But circumstantial evidence may be and often is stronger and more satisfactory than direct evidence; *Schwantes v. State* (1906), 127 Wis. 160, 106 N. W. 237, and *Spick v. State* (1909), 140 Wis. 104, 121 N. W. 664, which discuss the subject at length." [14]

Plaintiff in error argues that the tires were never properly identified. However, the service station inventory disclosed a shortage of six Atlas tires of the same size and description as the six here in question. All six tires were in their original wrappings. We hold the identification sufficient.

The three tires found leaning against the fence were found on the apartment building's private sidewalk. Just across that fence was the service-station premises where other tires were piled. The men were identified and observed walking on that sidewalk from Wisconsin avenue to the rear of the building where they disappeared from sight. They returned rolling three tires. They were not tenants of the building, nor did they have any apparent business in the building. The inspection of the premises revealed the three tires remaining against the fence. Plaintiff in error has suggested no reasonable alternative to the inferences drawn by the court that the two suspects reached over the fence (about two feet), took the tires from their piles, placed them against the fence, and would have returned for them had they not been interrupted so

[14] *State v. Johnson* (1960), 11 Wis. (2d) 130, 134, 135, 104 N. W. (2d) 379, quoted with approval in *Hemmis v. State* (1964), 24 Wis. (2d) 346, 353, 354, 129 N. W. (2d) 209.

quickly by the police. Suppositions to the contrary not founded in the evidence are not reasonable inferences.

On review the test to be applied is "whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt." [15] This test is equally applicable where trial has been to the court.

Plaintiff in error put in no case of his own. Under the test to be applied we hold that the evidence produced was sufficient to prove guilt beyond a reasonable doubt. The acts went beyond mere preparation to commit a crime and were well enough along to run afoul of the prohibition of attempted theft. The men needed only to return and to take the tires, which had been secreted, into final possession to complete the theft.

Finally, plaintiff in error contends for the first time on appeal that the arrest warrant, which was issued after the men had been arrested and taken to the Safety Building, was defective. As we have determined that the search without warrant was legal, then the arrest was legal. The question of the validity of an arrest warrant issued later is then moot. Plaintiff in error has not attacked the validity of the arrest without warrant.

However, even if that question were in issue here, plaintiff in error has waived his right to raise it. He did not object to the warrant or the court's jurisdiction, but pleaded and went to trial. We held in *State ex rel. La Follette v. Raskin* [16] that the issue of jurisdiction, to which the warrant runs, is waived when not raised before pleading to the information.

*By the Court.*—Judgment affirmed.

---

[15] *State v. Johnson, supra,* at page 137, quoted with approval in *State v. Stevens* (1965), 26 Wis. (2d) 451, 463, 132 N. W. (2d) 502, and *State v. Waters* (1965), 28 Wis. (2d) 148, 153, 135 N. W. (2d) 768.

[16] Ante, p. 39, 139 N. W. (2d) 667.